UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 0:13-cv-60199

ALEX MORALES, on Behalf of Himself
and All Others Similarly Situated,

    Plaintiff,

-v-

PROGRESSIVE CASUALTY INSURANCE
COMPANY,

    Defendant.
_____/

**PROGRESSIVE CASUALTY INSURANCE COMPANY'S
MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW**

    The Defendant, Progressive Casualty Insurance Company ("Progressive"), moves this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for the entry of an Order dismissing the Second Amended Complaint ("SAC"), filed herein by the Plaintiff, Alex Morales, on behalf of himself and all others similarly situated ("Plaintiff"), and, in support thereof, submits the following Memorandum of Law:

INTRODUCTION

    Plaintiff is a former Progressive insured who participated in Progressive's Snapshot program. Snapshot is a usage-based insurance program that allows participants to save money on car insurance by transmitting data about their driving habits to Progressive through a small device that plugs into their vehicles. According to Plaintiff, the Snapshot device he used drained his car battery, requiring him to purchase a new one. Although Plaintiff alleges no facts regarding the circumstances in which his car battery drained, he concludes that the battery

drainage must have been attributable to the Snapshot device.  Likewise, while Plaintiff fails to identify any representations Progressive made to him (or anyone else) that the Snapshot device would *not* use his car battery, he nevertheless contends that Progressive's supposed misrepresentations caused him to incur the cost of replacing his battery.  On that slender reed, Plaintiff asserts claims against Progressive for negligence, negligent misrepresentation, breach of implied warranty of merchantability, and violations of the consumer protection statutes of 16 states and the District of Columbia.  Plaintiff's claims fail as a matter of law.

*First*, Plaintiff's negligence claim is inadequately pled.  Plaintiff asserts – without alleging facts – that Progressive owes an unspecified "duty" to him "to use reasonable care in the formulation, design, manufacture, marketing, advertising, and distribution" of Snapshot.  SAC ¶ 40.  But Plaintiff does not describe the nature of that duty; nor, beyond repeating his conclusory assertion that Snapshot "always drains the car's battery," *e.g.*, *id.* ¶ 20, does Plaintiff allege how Progressive supposedly breached its alleged duty.  Finally, Plaintiff alleges no facts even suggesting that the Snapshot device alone caused his car battery to drain.  Because Plaintiff's negligence claim is based on precisely the type of shotgun allegations courts in this District repeatedly have rejected, this Court should dismiss it.

*Second*, Plaintiff's claim for negligent misrepresentation fails because Plaintiff does not identify any misrepresentation that Progressive made to him about the Snapshot device.  Plaintiff alleges only that Progressive "implied" that the Snapshot device "was safe for use in his vehicle," SAC ¶ 6, without identifying any specific representation(s) Progressive made about the Snapshot device's battery usage.  Absent an allegation of a specific misrepresentation, Plaintiff cannot state a claim for negligent misrepresentation.

*Third*, Plaintiff's claim for breach of implied warranty of merchantability fails because (i) Progressive did not sell the Snapshot device to Plaintiff and thus made no such warranty to him, and (ii) Plaintiff has not alleged – and cannot allege – that the Snapshot device was not fit for its ordinary purpose, which is the linchpin of Plaintiff's claim.

*Fourth*, Plaintiff's state consumer protection statute claims fail because Plaintiff, a Florida resident, lacks standing to assert claims under the consumer protection statutes of 15 other states and the District of Columbia, none of which even allegedly has any connection to Plaintiff's claims.  Merely seeking to represent a putative nationwide class does not bestow statutory standing on Plaintiff under other states' laws.  Moreover, Plaintiff cannot state a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") because his allegations fall far short of the particularized allegations required under Fed. R. Civ. P. 9(b).

For these reasons, the Court should grant Progressive's Motion and dismiss Plaintiff's Complaint with prejudice.

FACTUAL BACKGROUND

Plaintiff is a Florida resident who became a Progressive insured in August 2011.  SAC ¶ 6.  At some point thereafter, Plaintiff enrolled in Progressive's Snapshot program.  *Id.*  Plaintiff describes Snapshot as a "usage-based insurance program" that allows Progressive's insureds and prospective insureds to "save money on their car insurance by sharing their driving habits with Progressive."  *Id.* ¶ 1; *see also id.* ¶ 10 (noting that Snapshot is available to both insureds and non-insureds).  Specifically, Progressive provides Snapshot enrollees with "a device that can fit into the palm of one's hand, plugs into the vehicle's on-board diagnostic port, and is powered through the vehicle's battery."  *Id.* ¶ 2.  The Snapshot device then "records and sends driving data directly to Progressive, and Progressive uses that information to calculate a participating customer's insurance rate."  *Id.*  Snapshot is "voluntary."  *Id.* ¶ 8.  Snapshot is a free service that

Progressive provides to its current and prospective insureds. *See* http://www.progressive.com/auto/snapshot-how-it-works/ (last accessed May 31, 2013).

According to Plaintiff, he enrolled in Snapshot after viewing and reading "Progressive's promotional, advertising and marketing materials for Snapshot." *Id.* ¶ 6. Plaintiff alleges that these materials "implied that Snapshot was safe for use in his vehicle." *Id.* Plaintiff does not identify any specific representation to that effect, who made such a representation, or when such a representation was made. Moreover, while Plaintiff specifically alleges that he "enrolled" in the Snapshot program, he fails to describe the circumstances of his enrollment. Plaintiff does acknowledge, however, that he did not buy the Snapshot device from Progressive. SAC ¶ 15 ("Progressive and its vendors retain all right, title, and interest in and to Snapshot"). Likewise, Plaintiff acknowledges that the Snapshot program is "voluntary," *id.* ¶ 8, but he fails to allege whether he paid Progressive for the privilege of using Snapshot.

After enrolling in Snapshot and plugging the Snapshot device "into his car's on-board diagnostic port," Plaintiff purports to have "experienced occurrences in which his car would not start," which required Plaintiff to "ask others to assist him in jump-starting his car" and to "purchase jumper cables." *Id.* ¶ 6. Eventually, Plaintiff took his car – a 2006 Acura 3.2 TL – to an unidentified "Acura repair facility," where an unidentified person "informed" Plaintiff "that his car battery was drained to the point that it was non-functional." *Id.* Plaintiff does not identify the person who so informed him; nor does Plaintiff allege that the unidentified individual – or anyone else – "informed" him that his battery drainage resulted from use of the Snapshot device. Indeed, Plaintiff provides no explanation for how he reached the conclusion that the Snapshot device caused his battery to drain, except that he "never had a problem with his vehicle's battery prior to his use of Snapshot." *Id.*

As a result of the Snapshot device supposedly draining Plaintiff's car battery, Plaintiff paid the unidentified Acura repair facility $91.10 for a new battery. *Id.* On that basis, Plaintiff asserts four claims: (i) negligence, (ii) negligent misrepresentation, (iii) breach of implied warranty of merchantability, and (iv) violations of the state consumer protection laws of 16 states and the District of Columbia. *Id.* ¶¶ 29-63. Plaintiff purports to assert these claims on his own behalf and on behalf of a purported nationwide class including all persons who participated in the Snapshot program since its inception. Plaintiff also seeks to represent a putative subclass of such individuals who live in the 16 states under whose consumer protection statutes he purports to assert claims, and in the District of Columbia. *Id.* ¶ 27.

## ARGUMENT

The Court should dismiss Plaintiff's claims because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). This "plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. To the contrary, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Moreover, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

As demonstrated below, Plaintiff has not – and cannot – satisfy this standard. His claims, therefore, should be dismissed as a matter of law. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010) (affirming dismissal of purported class action because even

5

though plaintiffs' factual allegations were detailed, they did not allow court plausibly to infer wrongdoing by defendants).

I.  PLAINTIFF'S NEGLIGENCE CLAIM IS INADEQUATELY PLED UNDER *IQBAL* AND *TWOMBLY*

The Court should dismiss Plaintiff's negligence claim because Plaintiff has not – and cannot – plausibly allege that by permitting Plaintiff to use the Snapshot device in his automobile, Progressive breached the standard of reasonable care, causing damage to Plaintiff. To state a negligence claim under Florida law,[1] "a plaintiff must allege that the defendant owed a duty, that the defendant breached that duty, and that this breach caused the plaintiff damages." *Gomez v. Pfizer, Inc.*, 675 F. Supp. 2d 1159, 1162-63 (S.D. Fla. 2009) (citing *Fla. Dep't of Corrections v. Abril*, 969 So. 2d 201, 204-05 (Fla. 2007)). A plaintiff cannot adequately allege these elements by making an "unadorned, the-defendant-unlawfully-harmed-me accusation." *See Kaufman v. Pfizer Pharma., Inc.*, No. 1:02-cv-2692, 2010 WL 9438673, at *2 (S.D. Fla. Nov. 23, 2010) (quoting *Iqbal*, 556 U.S. at 678).

Plaintiff attempts to do just that by asserting a negligence claim based on three bare legal conclusions, encompassed in three paragraphs of the 63-paragraph SAC:

- "Progressive, as a manufacturer and distributor of Snapshot, owes a duty to its customers to use reasonable care in the formulation, design, manufacture,

---

[1] Although Plaintiff invokes the laws of sixteen states and the District of Columbia, SAC ¶¶ 27, 57-63, he does not identify what law applies to his individual claim. As explained below, Plaintiff's attempt to assert claims under the laws of states that have no connection to his claim is futile. Instead, the Court should evaluate the viability of Plaintiff's individual claims under Florida law. Federal courts sitting in diversity apply the choice-of-law rules of the forum state. *See Stone v. Wall*, 135 F.3d 1438, 1441-42 (11th Cir. 1998). Under Florida's choice-of-law rules, the Court properly may apply Florida law given Plaintiff's allegations that "many of the acts and transactions giving rise to this action occurred in" Florida and that "[d]uring the class period, Plaintiff . . . resided and continues to reside in Sunrise, Florida." SAC ¶¶ 5, 6; *see Stone*, 135 F.3d at 1442 (affirming trial court's application of Florida law in diversity case because plaintiff "specifically alleged tortious acts in Florida").

>    marketing, advertising, and distribution of its products to ensure that they are safe for use in vehicles," SAC ¶40;
> 
> - "[Progressive] breached its duty as described herein by failing to exercise reasonable care in the formulation, design, manufacture, marketing, advertising, and distribution of Snapshot, which causes drainage to a vehicle's battery to the point that the battery is non-functional or diminished in value," *id.* ¶41; and
> 
> - "As a direct and proximate result of [Progressive's] failure to exercise reasonable care in the formulation, design, manufacture, marketing, advertising, and distribution of Snapshot, Plaintiff and members of the [purported] Class suffered damages." *Id.* ¶42.

The only factual allegation in the SAC purportedly supporting these legal conclusions is that, at an unspecified period of time after he began using Snapshot, Plaintiff "experienced occurrences in which his car would not start" and ultimately an unspecified person at an unspecified "Acura repair facility" "informed" him that his "battery was drained to the point that it was non-functional." *Id.* ¶ 6.  Plaintiff concludes that this generic battery problem must have resulted from the use of Snapshot in his vehicle.  *See id.*

      Plaintiff's shotgun approach to pleading his negligence claim is facially inadequate. Plaintiff asserts that Progressive was negligent in six different ways – "formulation, design, manufacture, marketing, advertising, and distribution" of Snapshot – without even acknowledging the legal distinctions between those negligence theories, much less alleging facts to support them.  Nowhere in the SAC does Plaintiff allege what duty Progressive purportedly owed to him generally, much less the specific duties Progressive purportedly owed him in the context of the "formulation, design, manufacture, marketing, advertising, and distribution" of

7

Snapshot, respectively. Nor does Plaintiff allege any facts regarding the nature of the supposed defect that Plaintiff assumes caused his battery drainage, such as what the defect is or why the defect allegedly causes the drainage. In light of these fundamental omissions, it comes as no surprise that Plaintiff also does not allege how he reached the conclusion that the Snapshot device, alone among the myriad everyday causes of automotive battery drainage, caused the battery in his five-year-old vehicle to drain.

In short, Plaintiff simply recites the elements of a negligence claim and then concludes that Progressive was negligent, without alleging any supporting facts. Those allegations are precisely the sort of "labels and conclusions" that the Supreme Court has held "will not do." *See Twombly,* 550 U.S. at 555. Moreover, courts in this District repeatedly have dismissed shotgun-pled negligence claims unsupported by specific factual allegations. *See, e.g., Gomez*, 675 F. Supp. 2d at 1162-63 (dismissing negligence claim because plaintiff's generalized allegations were insufficient "to allege an existence of a duty" or how defendants breached their respective duties); *Llado-Carreno v. Guidant Corp.*, No. 09-20971-CIV, 2011 WL 705403, at *3 (S.D. Fla. Feb. 22, 2011) (dismissing negligence claim based on legal conclusions and lacking "specific factual allegations"); *Kaufman*, 2010 WL 9438673, at *3-*4 (dismissing complaint alleging negligence resulting from "inadequate or defective preparation, design, research, development, manufacture, labeling, inspection, marketing, promotion, and sale of" prescription drugs); *Gott v. Am. Standard, Inc.*, No. 03-20772-CIV, 2003 WL 25763223, at *1 (granting motion to dismiss negligence claim, pre-*Twombly*, because claim was inadequately pled). This Court should do the same and, following the Supreme Court's guidance in *Iqbal* and *Twombly*, dismiss Plaintiff's negligence claim.

## II. PLAINTIFF CANNOT STATE A CLAIM FOR NEGLIGENT MISREPRESENTATION

The Court should dismiss Plaintiff's negligent misrepresentation claim because Plaintiff does not identify a single "misrepresentation" that Progressive made to him regarding the Snapshot device's battery usage. To state a claim for negligent misrepresentation under Florida law, Plaintiff must adequately allege that:

> (1) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because he should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely and [sic] on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation.

*See Simon v. Celebration Co.*, 883 So. 2d 826, 832 (Fla. 5th DCA 2004).

In the 18 paragraphs in which Plaintiff recites "factual allegations" regarding his claim, Plaintiff fails to identify a single misrepresentation Progressive made to him about Snapshot. *See* SAC ¶¶ 8-26. Likewise, in Count II, Plaintiff merely concludes that Progressive "made material misrepresentations to him," without identifying the supposed misrepresentations, much less alleging the content and nature of the purported misrepresentations, when the misrepresentations were made, or how they were communicated to Plaintiff. *See id.* ¶¶ 45-48. Indeed, Plaintiff effectively concedes that Progressive made no actual misrepresentations about Snapshot to him or anyone else by alleging only that Progressive ***"implied"*** that the Snapshot device is safe to use, without explaining how Progressive made such an implication or why it in fact is not. *See id.* ¶ 2 (emphasis added).

This Court need not accept Plaintiff's barebones assertions and legal conclusions under

*Iqbal* and *Twombly*.[2] *See Kaufman*, 2010 WL at 9438673, at *6 (dismissing inadequately pled negligent misrepresentation claim). Because Plaintiff's allegations do not even meet Rule 8's pleading standard, they fall far short of the Rule 9(b)'s heightened standard, which is applicable to claims sounding in fraud, including negligent misrepresentation claims. *See Inman v. Am. Paramount Fin.*, No. 12-12049, 2013 WL 1729801, at *3 (11th Cir. Apr. 22, 2013) (applying Florida law and affirming dismissal of negligent misrepresentation claim as inadequately pled under Rule 9(b)). The Court, therefore, should dismiss Plaintiff's negligent misrepresentation claim.

### III. PLAINTIFF CANNOT STATE A CLAIM FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

Plaintiff's claim for breach of implied warranty of merchantability fails for two reasons. First, Progressive made no implied warranty to Plaintiff because Progressive merely permitted Plaintiff to use the Snapshot device gratuitously; it did not sell (or lease) the Snapshot device to Plaintiff in exchange for consideration. Second, even if Progressive had made an implied warranty of merchantability to Plaintiff, Progressive did not breach the warranty because Plaintiff does not allege any facts suggesting that the Snapshot device Plaintiff used was unfit for its ordinary purpose.

---

[2] This is particularly true here, given that Progressive expressly disclosed to Plaintiff that the Snapshot "device uses a certain amount of current from the battery even when the vehicle is not turned on." Terms and Conditions, available at http://www.progressive.com/auto/snapshot-terms-conditions/ (last accessed May 31, 2012); *see Griffin Indus. v. Irvin,* 496 F.3d 1189, 1205-06 (11th Cir. 2007) . Because the Terms and Conditions appear on Progressive's website, which Plaintiff expressly refers to in the SAC and which is central to Plaintiff's claims that Progressive implied that the Snapshot device is safe, the Court may properly consider the Terms and Conditions and other materials on the website without converting this motion to dismiss into a summary judgment motion. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (explaining that when plaintiff "refers to certain documents in the complaint and those documents are central to the plaintiff's claim, the court may consider the documents part of the pleadings," without converting the motion into a motion for summary judgment).

10

A. Progressive Made No Implied Warranties To Plaintiff.

Plaintiff cannot state a claim for breach of the implied warranty of merchantability because Progressive did not sell the Snapshot device to Plaintiff. *See McQuiston v. K-Mart Corp.*, 796 F.2d 1346, 1347 (11th Cir. 1986) (holding that no implied warranty attached because there was no sale of goods). "Both the Florida Uniform Commercial Code (UCC) and Florida common law require a sale of a product before there can be an implied warranty." *Id.*; *see* Fla. Stat. § 672.314 (providing that "a warranty that the goods shall be merchantable is implied in a contract for their *sale* if the *seller* is a merchant with respect to goods of that kind.") (emphasis added). The UCC defines a "sale" as "the passing of title from the seller to the buyer for a price." Fla. Stat. § 672.106(1).

The SAC contains no allegation that Progressive sold Plaintiff the Snapshot device, that Plaintiff paid Progressive any money for the Snapshot device, or that Plaintiff provided any consideration of any kind for his use of the Snapshot device. Instead, Plaintiff merely alleges that "Progressive mailed [him] a Snapshot device which he plugged into his car's on-board diagnostic port." SAC ¶ 6. Moreover, Plaintiff expressly alleges that the Snapshot device remained Progressive's property; title did not pass to Plaintiff.[3] *Id.* ¶ 15.

Because Plaintiff has not alleged – and cannot allege – that Progressive sold him the Snapshot device, he cannot state a claim for breach of implied warranty. *See McQuiston*, 796 F.2d at 1347; *Am. Coach Lines of Orlando, Inc. v. N. Am. Bus Indus., Inc.*, No. 6:09-cv-1999-Orl-19GJK, 2010 WL 3958692, at *6 (M.D. Fla. Oct. 8, 2010) (holding that defendant could not be liable for breaching implied warranty because defendant did not sell the products to plaintiff). Accordingly, the Court should dismiss his claim.

---

[3] In fact, the Terms and Conditions required Plaintiff to return the Snapshot device to Progressive once his vehicle was "no longer registered for the program."

B.     Plaintiff Fails To Allege That The Snapshot Device Was Unmerchantable.

Even if Plaintiff could allege that Progressive made an implied warranty of merchantability to him regarding the Snapshot device, his claim for breach of that warranty would fail. Plaintiff's conclusory assertion that he was using the Snapshot device "for its intended purpose," SAC ¶ 52, but that it was "not fit for the purpose for which it is used," SAC ¶ 54, is insufficient to state a claim. As an initial matter, merchantability does not turn on whether a product is fit for its "intended" purpose; it depends on whether the product is fit for its "*ordinary* purpose[]." *See* Fla. Stat. § 672.314 (emphasis added) (implied warranty of merchantability requires goods to be "fit for the ordinary purposes for which such goods are used"); *see also Amoroso v. Samuel Friedland Family Enters.*, 604 So. 2d 827, 832 (Fla. 4th DCA 1992) (noting that the implied warranty of merchantability was breached when the products were not fit for their ordinary use).

According to Plaintiff, the ordinary purpose of the Snapshot device is to "record[] and send[] driving data directly to Progressive," so that Progressive can use "that information to calculate a participating customer's insurance rate." SAC ¶ 2. Plaintiff does not allege that the Snapshot device has any defect that renders it unfit for that purpose. For example, Plaintiff does not allege that the device fails to record information about Plaintiff's driving or to send that information to Progressive. Courts around the country regularly dismiss merchantability claims when the plaintiff alleges that a product is somehow "defective" in a manner that does not interfere with its ordinary purpose. *See Savett v. Whirlpool Corp.*, No. 12-cv-310, 2012 WL 3780451, at *11 (N.D. Ohio Aug. 31, 2012) (dismissing breach of implied warranty claim where washing machine's alleged noncompliance with government energy efficiency guidelines did not interfere with its ordinary purpose of "wash[ing] and clean[ing] dirty clothes"); *Alin v. Am. Honda Motor Co.*, No. 08-4825, 2010 WL 1372308, at *12 (D.N.J. Mar. 31, 2010) (dismissing

breach of implied warranty claim where alleged defect in vehicle's air conditioning unit, "while inconvenient, does not render a vehicle unfit" for its general purpose of providing transportation); *Tietsworth v. Sears, Roebuck & Co.*, No. 5:09-cv-00288 JF (HRL), 2009 WL 3320486, at *12 (N.D. Cal. Oct. 13, 2009) (dismissing merchantability claim regarding washing machines because allegations that machines "stop in mid-cycle and . . . must be restarted" were not allegations of "fundamental defect that renders the product unfit for its ordinary purpose"). Accordingly, because Plaintiff does not, and cannot, allege that the defect in his Snapshot device interferes with its ordinary purpose of recording and transmitting data about his driving to Progressive, his merchantability claim should be dismissed. *See Llado-Carreno*, 2011 WL 705403, at * 4 (dismissing implied warranty claim because plaintiff had not alleged specific facts suggesting product had not served its ordinary purpose).

Likewise, Plaintiff's assertion that the Snapshot device "was not fit . . . as promoted, advertised, marketed and distributed" is insufficient to state a claim. SAC ¶ 54. Although Plaintiff fails to identify the component of merchantability to which this allegation supposedly relates, it presumably relates to the requirements that goods "[p]ass without objection in the trade under the contract description"; "[a]re adequately contained, packaged, and labeled as the agreement may require;" or "[c]onform to the promises or affirmations of fact made on the container or label if any." *See* Fla. Stat. § 672.314(2)(a), (e), (f). These criteria plainly do not apply here: Plaintiff makes no allegations regarding the "contract description" of Snapshot, or the container, packaging, or labeling of Snapshot. Accordingly, the Court should dismiss Plaintiff's claim for breach of implied warranty of merchantability.[4]

---

[4] If the Court determines that Plaintiff's claim is viable even though Progressive did not sell Plaintiff the Snapshot device, then it nevertheless should dismiss the claim because Plaintiff has not alleged that he provided Progressive with reasonable presuit notice, as the UCC requires.

IV. **PLAINTIFF'S CLAIM FOR ALLEGED VIOLATIONS OF STATE CONSUMER PROTECTION STATUTES FAILS**

Plaintiff purports to assert a claim under the consumer protection statutes of sixteen states and the District of Columbia, even though the SAC contains no allegation that any events giving rise to Plaintiff's claim occurred in any state other than Florida. Plaintiff's claim fails for two reasons. First, Plaintiff, who is a Florida resident, lacks standing to assert claims under other state's consumer protection statutes. Second, Plaintiff cannot state a FDUTPA claim because he fails to allege any details regarding Progressive's allegedly unfair and deceptive acts or to show Progressive's actions constitute a "deceptive practice" within the meaning of the FDUTPA, as required by Rule 8 and Rule 9(b).

    A.    Plaintiff Lacks Standing To Assert Violations Of Other States' Consumer Fraud Statutes.

As a threshold matter, Plaintiff cannot assert claims under consumer protection statutes of states other than the state where he lives and received the Snapshot device from Progressive. It is axiomatic that a named plaintiff must have standing in his own right to assert claims on behalf of a class. *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987). Accordingly, Plaintiff's claims must survive or perish on their own; Plaintiff cannot "bootstrap" claims just because he purports to represent an absent class. *See id.* (explaining that a plaintiff cannot include class action allegations in a complaint and expect to be relieved of personally meeting the requirements of constitutional standing, "even if the persons described in the class definition would have standing themselves to sue") (citation omitted).

Plaintiff alleges that he lives in Florida and received his Snapshot device from Progressive in Florida. SAC ¶ 6. Plaintiff makes no allegation that any events giving rise to his

---

*See* Fla. Stat. § 672.607(3)(a) (providing that "[w]here a tender has been accepted . . . [t]he buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach or be barred from any remedy").

claims occurred in any state other than Florida. Nevertheless, in addition to Florida's consumer protection statute, Plaintiff purports to assert claims under the consumer protection statutes of fifteen states and the District of Columbia, apparently because he seeks to represent a purported nationwide class and/or subclass of residents of those states.[5]

Merely aspiring to represent a class that includes citizens of other states, however, does not entitle Plaintiff to avail himself of other states' consumer protection laws. *See Feheley v. LAI Games Sales, Inc.*, Case No. 08-2306-CIV-MORENO, 2009 U.S. Dist. LEXIS 70430, at *22-*23 (S.D. Fla. Aug. 10, 2009) (finding that the plaintiff, a Florida resident, had failed to allege or demonstrate that he had standing to sue for violations of other state's consumer protection statutes); *see also Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 255 (3d Cir. 2010) (in conducting choice of law analysis, finding plaintiff who bought television at issue in his home state of Arizona was not entitled to sue under the New Jersey consumer fraud statute); *Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 267 n.30 (S.D.N.Y. 2011) (granting motion to dismiss claim under New York consumer protection law because, among other things, plaintiffs inadequately alleged that transaction at issue occurred in New York). Accordingly, Plaintiff's claim must be dismissed.[6]

---

[5] Specifically, Plaintiff invokes the consumer protection statutes of Arizona, Arkansas, Colorado, Connecticut, Delaware, Idaho, Michigan, Missouri, New Hampshire, New Jersey, New Mexico, New York, Oregon, West Virginia, Wisconsin, and the District of Columbia.

[6] Even if Plaintiff could assert claims under other states' consumer protection statutes – and he cannot – his allegations are woefully inadequate. Plaintiff's general statements that the statutes "proscribe unfair, unconscionable, and/or deceptive acts or practices" and that Progressive "violated these statutes by engaging in the [allegedly] unfair and deceptive practices" he purports to allege, SAC ¶ 59, do not even rise to the insufficient level of a "formulaic recitation of the elements" of claims under the 17 statutes Plaintiff invokes. *See Twombly,* 550 U.S. at 555. Simply stated, Plaintiff has failed to allege any facts showing that he is entitled to relief under the statutes of any of the states he lists.

B.  Plaintiff's FDUTPA Claim Is Inadequately Pled Under Rule 9(b).

Assuming Plaintiff has statutory standing to assert a claim under FDUTPA, he fails to state a claim under that statute because his allegations do not satisfy even the fundamental pleading standard imposed by Rule 8 and thus fall far short of the heightened pleading requirements of Rule 9(b). Plaintiff's FDUTPA claim sounds in fraud. *See* SAC ¶¶ 19-26 (alleging that Progressive made unidentified misrepresentations about the Snapshot device causing "battery drainage"). Accordingly, to state a claim under FDUTPA, Plaintiff must allege the facts supporting the claim with particularity. *See* Fed. R. Civ. P. 9(b); *Sunoptic Techs, LLC v. Integra Luxtec, Inc.*, No. 3:08-cv-878-J-16JRK, 2009 WL 722320, at *2 (M.D. Fla. Mar. 18, 2009) (applying Rule 9(b) to a FDUTPA claim sounding in fraud); *Siever v. BWGaskets, Inc.*, No. 6:08-CV-1388-Orl-19GJK, 2009 WL 528624, at *3 n.1 (M.D. Fla. Mar. 2, 2009) (stating that Rule 9(b) applies to FDUTPA claims "grounded in fraud") (citation omitted)*; Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002) (finding that allegations of fraud involving a FDUTPA claim trigger heightened pleading standards under Rule 9(b)).

To comply with Rule 9(b), a plaintiff must set forth:

(1) precisely what statements were made in what documents or oral representations or what omissions were made, and

(2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and

(3) the content of such statements and the manner in which they misled the plaintiff, and

(4) what the defendants obtained as a consequence of the fraud.

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (quotation omitted). "Rule 9(b) 'serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants

against spurious charges of immoral and fraudulent behavior.'" *Inman*, 2013 WL 1729801, at *3.

Plaintiff does not satisfy these criteria because he fails to allege *any* misrepresentations that Progressive makes regarding the Snapshot device's supposed propensity to drain car batteries. Instead, Plaintiff alleges only that Progressive implied certain things through its advertising campaign for the Snapshot program. SAC ¶ 2. Similarly, Plaintiff summarily alleges that Progressive "fails to disclose" that the Snapshot device supposedly "always" drains users' car batteries, but he does not allege detailed facts to support this conclusion. *See, e.g.*, SAC ¶ 20. Moreover, with respect to both the alleged misrepresentations and the alleged omissions, Plaintiff wholly fails to allege that Progressive obtained anything as a result. Plaintiff makes no effort to explain – much less allege with particularity – why Progressive would deceive its policyholders into using a product it purportedly knows to be defective, but that Plaintiff does not even allege he paid to use, so that insureds can reduce their automobile insurance premiums. Plaintiff, therefore, has failed to plead his fraud-based FDUTPA claim with the requisite specificity, and the Court should dismiss it.

## CONCLUSION

Because Plaintiff's claims fail as a matter of law, and because Plaintiff already has amended his complaint, Progressive respectfully requests that the Court dismiss the SAC with prejudice.

Case No. 0:13-cv-60199

CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that the undersigned electronically filed the foregoing PROGRESSIVE CASUALTY INSURANCE COMPANY'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW with the Clerk of the Court using CM/ECF and that a corresponding copy was served, via transmission of Notices of Electronic Filing generated by CM/ECF to: **Adam M. Balkan, Esq., John B. Patterson, Esq., & Paris R. Webb, Esq**., Balkan & Patterson, LLP, 601 S. Federal Highway, Suite 302, Boca Raton, Florida 33432; **Jonathan M. Stein, Esq., and Adam Warden, Esq.,** Saxena White, P.A., 2424 North Federal Highway, Suite 257, Boca Raton, Florida 33431; **Jeffrey M. Braxton, Esq**., Law Offices of Slootsky, Perez & Braxton, 2950 W. Cypress Creek Blvd., Suite 300, Fort Lauderdale, Florida 33309 on this **31st** day of May, 2013.

SEIPP, FLICK & HOSLEY, LLP
Attorneys for Progressive

By:    *Donald A. Blackwell*
Donald A. Blackwell (FB#370967)
Two Alhambra Plaza, Suite 800
Miami, Florida 33134-5214
(305) 995-5600 (tel.)
(305) 995-6090 (fax)

and

Jeffrey S. Cashdan (*pro hac vice* pending)
Zachary A. McEntyre (*pro hac vice* pending)
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309-3521
(404) 572-4600 (tel.)
(404) 572-5100 (fax)