UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 0:13-cv-60199

| | | |
|---|---|---|
| ALEX MORALES, on Behalf of Himself and All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | DEMAND FOR JURY TRIAL |
| PROGRESSIVE CASUALTY INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

---

### THIRD AMENDED COMPLAINT – CLASS ACTION

Plaintiff Alex Morales ("Plaintiff"), brings this action on behalf of himself and all others similarly situated against defendant, Progressive Casualty Insurance Company, (hereinafter, "Progressive" or "Defendant"), and states:

### NATURE OF ACTION

1.      Progressive's Snapshot® usage-based insurance program is a discount program where Progressive's customers can purportedly save money on their car insurance by sharing their driving habits with Progressive.[1]  According to Progressive, seven out of ten drivers who try Progressive's Snapshot program have qualified for a discount, which can be as high as 30 percent.  According to Progressive, it is "simply asking all drivers, 'why wouldn't you try it?'"[2]

2.      Participating customers are given a device that can fit into the palm of one's hand, plugs into the vehicle's on-board diagnostic port, and is powered through the vehicle's battery.

---

[1]      Snapshot is also referred to as "MyRate®" in some states.  Snapshot and MyRate are referred to collectively herein as Snapshot.

[2]      *See* http://www.progressive.com/newsroom/2012/July/snapshot.aspx (last visited July 20, 2012).

The device records and sends driving data directly to Progressive, and Progressive uses that information to calculate a participating customer's insurance rate.  After installation of the Snapshot device, driving data is analyzed for 30 days, after which customers find out if they are eligible for a discount based on their driving habits.  Progressive claims that Snapshot customers can make changes to their driving habits that will lead to "bigger discounts" and "huge savings." Through Progressive's marketing and advertising campaign, Progressive implies that Snapshot is safe for use in vehicles.  Progressive conveyed and continues to convey this deceptive message through a fully-integrated advertising campaign, which utilizes a variety of media, including television, newspapers, magazines, direct mail and the Internet.  Progressive's representations, however, are false, misleading and reasonably likely to deceive the public since Snapshot always drains a vehicle's battery, making the battery worth less than it would be without the Snapshot device. Many times a vehicle's battery is drained to the point that the battery is non-functional.

3.     Plaintiff brings this action on behalf of himself and all others similarly situated who have participated in the Snapshot program in the United States.  This action seeks to halt Progressive's dissemination of the false advertising message that Snapshot is safe for use in vehicles, correct the false and misleading perception it has created in the minds of consumers, and to obtain redress for those who have experienced damage to their vehicles by their participation in Snapshot.

**JURISDICTION AND VENUE**

4.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the Class of plaintiffs are citizens of states different from Progressive.  Further, greater than two-thirds of the Class members reside in states other

than the state in which Progressive is a citizen.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that many of the acts and transactions giving rise to this action occurred in this district and because defendant:

(a)      is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district through the promotion, marketing, and distribution of its products in this district;

(b)      does substantial business in this district; and

(c)      is subject to personal jurisdiction in this district.

## PARTIES

6.      During the class period, Plaintiff Alex Morales resided and continues to reside in Sunrise, Florida.  On or about August 25, 2011, Plaintiff became a customer of Progressive, which provided automobile insurance for Plaintiff's automobile, a 2006 Acura 3.2 TL.  Plaintiff was exposed to, viewed and read Defendant's promotional, advertising and marketing materials for Snapshot.  Those materials, found on television and the internet, implied that Snapshot was safe for use in his vehicle.  From Progressive's representations in its marketing and promotional advertisements and materials, Plaintiff reasonably understood that Snapshot was safe for use in his vehicle and would not adversely affect his vehicle.  In reliance upon these representations, Plaintiff enrolled in the Snapshot program.  Progressive mailed Plaintiff a Snapshot device which he plugged into his car's on-board diagnostic port.  Shortly thereafter, Plaintiff experienced occurrences in which his car would not start.  Several times he was forced to ask others to assist him in jump-starting his car.  Due to the frequency of his car's failure to start, Plaintiff was compelled to purchase jumper cables.  Plaintiff took his car into an Acura repair facility where he was informed that his car battery was drained to the point that it was non-functional.  On

3

January 10, 2012, the Acura repair facility charged Plaintiff $91.10 to replace his car's battery. Plaintiff never had a problem with his vehicle's battery prior to his use of Snapshot. Plaintiff would not have enrolled in Snapshot had he known that Snapshot would drain his vehicle's battery to the point where the battery was non-functional.

7.     Progressive is incorporated in Ohio and maintains its principal place of business in Ohio. Progressive is registered to do business in the State of Florida, and has offices in the State of Florida including Broward County. Progressive promotes, markets and distributes Snapshot throughout the United States, including to tens of thousands of consumers in the State of Florida.

## FACTUAL ALLEGATIONS RELATED TO THE CLASS

8.     In February of 2011, Progressive announced the release of Snapshot, its usage-based insurance program. Snapshot is a voluntary discount program where Progressive's drivers can purportedly save money on their car insurance by sharing their driving habits with Progressive. Beginning in or around July 2012, Progressive also started offering Snapshot to customers before they switch to Progressive.[3]

9.     Progressive claims throughout its fully-integrated advertising campaign that Snapshot customers can make changes to their driving habits that will lead to "bigger discounts" and "huge savings." Progressive advertises that Snapshot is "really simple, just plug it in and it keeps track of your good driving habits. So the better you drive the more you save." According to Progressive's advertising, just plug in Snapshot and "forget about it for 30 days, and then start

---

[3]     *See, e.g.*, Progressive commercial entitled "Flo's Rallying Cry," available at http://www.youtube.com/watch?v=PgX1oziLdwI&feature=youtu.be (last visited July 20, 2012).

saving – up to 30 percent."[4]

10.     Snapshot is available to Progressive's car insurance customers in 43 states and the District of Columbia.[5]  Since July 2012, Progressive also makes Snapshot available to non-policyholders in 36 states, who can use Snapshot and determine what rate they would receive with Progressive.  Over half a million consumers have participated in the Snapshot program – a "usage-based insurance" ("UBI") program.

11.     Participating customers are given a small device that plugs into the vehicle's on-board diagnostic port.  Since 1996, it is mandatory that all vehicles sold in the United States have an on-board diagnostic port.  The Snapshot device appears below:[6]



---

[4]          *See, e.g.*, Progressive commercial entitled FloChat – How to Start Saving with Snapshot, available at http://www.youtube.com/watch?v=H2nQ0WRkWg0&feature=relmfu (last visited July 20, 2012).

[5]          Snapshot is available in all states except for AK, CA, HI, IN, NC, TN, and WA.

[6]          Progressive's website links to a webpage containing images of Snapshot.  *See* http://www.progressive.com/newsroom/2012/July/snapshot.aspx (linking to http://www.flickr.com/photos/progressive_insurance/sets/72157624777233319/) (last visited July 20, 2012).

12.     Snapshot utilizes "telematics" technology, which is "a type of machine-to-machine (M2M) communication that combines GPS, mobile computing and cellular communication."[7]   The patents relating to Progressive's Snapshot device state that tracking of the vehicle for location identification can be done by Snapshot through a global positioning system ("GPS") antenna and other locating systems.

13.     The Snapshot device records and sends the participant's driving data to Progressive, including information about how hard the driver breaks, when the car is on the road (time of day), and the miles driven by the car.  Progressive uses that information to calculate the customer's insurance rate, including potential discounts.  Progressive also enables participating customers to log onto an Internet page where they can track their driving data gathered by Snapshot, and purportedly monitor their potential insurance savings.

14.     After 30 days of using Snapshot to record their driving habits, Progressive informs customers if they are eligible for a discount – up to 30 percent – based on the 30-day "snapshot" of their driving habits.   At the end of a six-month insurance policy period, Progressive calculates the customer's renewal discount and customers return the Snapshot device to Progressive.

15.     Snapshot is considered the property of Progressive.  Progressive and its vendors retain all right, title, and interest in and to Snapshot.  Progressive's marketing materials claim that Progressive invented Snapshot, that Progressive is the first company to use Snapshot, and that Snapshot is patented and proprietary.[8]

16.     When properly installed in a vehicle, Snapshot is continually powered by at least

---

[7]      See http://networkingexchangeblog.att.com/enterprise-business/telematics-update-progressive-insurances-snapshot-ushers-in-a-new-era-in-automobile-insurance-pricing/ (last visited July 20, 2012).

[8]      *See, e.g.*, Progressive commercial entitled FloChat – Introducing Progressive Snapshot!, available at http://www.youtube.com/watch?v=ggWY7OPag0s (last visited July 20, 2012).

the vehicle battery.  That is, Snapshot uses electrical current from a vehicle's battery even when the vehicle is not turned on.

17.     Progressive negligently designed and manufactured Snapshot in a manner that it drains a vehicle's battery to the point that the battery is non-functional or diminished in value.

18.     Progressive failed to properly exert quality control measures to ensure that Snapshot was safe for use in vehicles and to ensure that Snapshot did not cause severe battery drainage.

19.     Television commercials for Snapshot have aired regularly across the country since the launch of Snapshot.  The first televised advertisements began in February, 2011, on network television. Progressive's television commercials and other media advertisements imply that Snapshot is safe for use in vehicles and/or fail to disclose that Snapshot can cause harm to a vehicle's battery.  A typical Snapshot television commercial depicts an insurance superstore with an overly enthusiastic employee named Flo, who explains the benefits of Snapshot and who claims that Snapshot can turn your driving habits into "huge savings" on car insurance. These representations are included in all forms of media used by Progressive.

20.     Progressive fails to disclose in its advertisements and other statements made to the Class the material information that Snapshot is not safe for vehicles because it always drains the car's battery, including to the point that the battery is non-functional.  That is, when all members of the Class plugged Snapshot into their vehicle, unbeknownst to them, the Snapshot device immediately and always began draining their vehicle's battery.

21.     Contrary to Progressive's uniform statements about Snapshot being a huge cost-savings device, Snapshot actually increases the costs to consumers by draining a vehicle's battery to the point that it is non-functional or diminished in value, which, in turn, causes

participants to incur additional costs for replacement of their vehicle's battery.

22.     Progressive implies that Snapshot is safe for use in vehicles, and Progressive's exhaustive advertising campaign builds on this deception.  Progressive's nationwide advertising campaign has been extensive and comprehensive, spending millions of dollars to convey this deceptive message to consumers throughout the United States.

23.     Plaintiff and the members of the Class relied upon the misrepresentations made by Progressive in its marketing materials and advertising campaigns regarding the quality and benefits of Snapshot.  Plaintiff and the members of the Class reasonably believed in the quality and safety of Snapshot, and that Snapshot would not adversely affect their vehicle. Progressive misled Plaintiff and the members of the Class into participating in the use of the harmful Snapshot product.

24.     Prior to the distribution of Snapshot, these harmful and defective products were in Progressive's exclusive possession.  According to Progressive, it has extensively researched and tested usage-based insurance programs, including Snapshot.  In a press release dated January 9, 2012, Progressive's President and CEO, Glenn Renwick stated "[f]or more than 15 years we have invested a great deal into the research, development, testing and piloting of usage-based insurance programs and will continue to do so."[9]  Progressive, therefore, was obligated to disclose to the members of the Class the defective nature of Snapshot.

25.     As a result of the misleading messages conveyed through its marketing and advertising campaign, Plaintiff and the members of the Class participated in Snapshot.  In fact, between July 2011 and July 2012, Progressive collected more than $1 billion in premiums from

---

[9]     *See* http://www.progressive.com/newsroom/2012/January/fourth-patent.aspx (last visited July 20, 2012).

customers who utilized Snapshot.[10]

26.    Progressive misrepresented the purported benefits of Snapshot, and failed to warn members of the Class of the defective and harmful nature of Snapshot, namely that it causes severe vehicle battery drainage.

## CLASS DEFINITION AND ALLEGATIONS

27.    Plaintiff brings this lawsuit on behalf of himself and on behalf of a Class and a Subclass of persons under Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure.

(a)    THE NATIONAL CLASS.  The proposed Class consists of:

> All persons in the United States who participated in Progressive's Snapshot program from the date that Snapshot was first offered until the date notice is provided to the Class.

(b)    THE MULTI-STATE SUBCLASS.  Claims are brought for this Subclass under the consumer-protection statutes of sixteen states and the District of Columbia, on behalf of persons who, during the class period, resided there.  The applicable provisions of these statutes are materially identical.

This Class consists of:

> All persons who participated in Progressive's Snapshot program from the date that Snapshot was first offered until the date notice is provided to the Class and who are residents of Arizona, Arkansas, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Idaho, Michigan, Missouri, New Hampshire, New Jersey, New Mexico, New York, Oregon, West Virginia, and Wisconsin.

28.    Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Classes may be expanded or narrowed by amendment or amended complaint.  Specifically excluded from the proposed Classes are the Defendant, its

---

[10]    *See* http://www.progressive.com/newsroom/2012/July/snapshot.aspx (last visited July 20, 2012).

officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by the Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with the Defendant and/or its officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

29.     ***Numerosity***.  The members of the Class are so numerous that their individual joinder is impracticable.  Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains hundreds of thousands of members.  The precise number of Class members is unknown to Plaintiff.  The true number of Class members is known by the Defendant, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.

30.     ***Existence and Predominance of Common Questions of Law and Fact***. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to, the following:

(a)     whether Progressive was negligent in the formulation, design, manufacture, marketing, advertising and distribution of Snapshot;

(b)     whether Progressive implied through its advertising and marketing campaign that Snapshot was safe for use in vehicles and/or failed to disclose that Snapshot was harmful to a vehicle's battery;

(c)     whether the claims discussed above are true, or are misleading, or reasonably likely to deceive;

(d)     whether Snapshot is unreasonably dangerous by virtue of a design defect,

manufacturing defect or inadequate warning and whether Progressive is strictly liable for same;

(e)     whether Progressive's alleged conduct violates public policy;

(f)     whether the alleged conduct constitutes violations of the laws asserted herein;

(g)     whether Progressive engaged in false or misleading advertising;

(h)     whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss;

(i)     whether Plaintiff and Class members are entitled to an award of punitive damages; and

(j)     whether Plaintiff and Class members are entitled to declaratory and injunctive relief.

31.     ***Typicality***.  Plaintiff's claims are typical of the claims of the members of the Classes in that Plaintiff's claims and the claims of the members of each Class all arise from the same event or pattern or practice:  the Defendant failed to exercise reasonable care in the formulation, design, manufacture, marketing, advertising, and distribution of Snapshot which causes drainage to a vehicle's battery to the point that the battery is non-functional or diminished in value; made material misrepresentations to Plaintiff and the members of the Class that Snapshot is safe for use in vehicles; breached the implied warranty of merchantability; and engaged in unfair and deceptive trade practices.

32.     ***Adequacy of Representation***.  Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained counsel highly experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no adverse or antagonistic interests to those of the Class.

33.     *Superiority*.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendant.  It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

34.     In the alternative, the Class may be also certified because:

(a)     the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendant;

(b)     the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     Defendant has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

35.     The claims asserted herein are applicable to all customers throughout the United States who participated in Snapshot.

36.     Adequate notice can be given to Class members directly using information maintained in Defendant's records or through notice by publication.

37.     Damages may be calculated, in part, from the customer information maintained in Defendant's records, so that the cost of administering a recovery for the Class can be minimized. However, the precise amount of damages available to Plaintiff and the other members of the Class is not a barrier to class certification.

38.     Unless a class is certified, Defendant will retain monies received as a result of its conduct that was taken from Plaintiff and proposed Class members. Unless a classwide injunction is issued, defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

**COUNT I**

**Negligence On Behalf of Plaintiff and the Class**

39.      Plaintiff realleges and incorporates by reference the allegations contained above as if fully set forth herein.

40.     Progressive, as a manufacturer and distributor of Snapshot, owes a duty to its customers to use reasonable care in the formulation, design, manufacture, marketing, advertising, and distribution of its products to ensure that they are safe for use in vehicles.

41.     Defendant breached its duty as described herein by failing to exercise reasonable care in the formulation, design, manufacture, marketing, advertising, and distribution of Snapshot, which causes drainage to a vehicle's battery to the point that the battery is non-functional or diminished in value.

42.     As a direct and proximate result of Defendant's failure to exercise reasonable care in the formulation, design, manufacture, marketing, advertising, and distribution of Snapshot, Plaintiff and the members of the Class suffered damages.

43.     Accordingly, Plaintiff, on behalf of himself and the members of the Class, seeks an award of all damages incurred as a result of Defendant's negligent conduct described herein.

**COUNT II**

**Negligent Misrepresentation**
**On Behalf of Plaintiff and the Class**

44.     Plaintiff realleges and incorporates by reference the allegations contained above as if fully set forth herein.

45.     Through its marketing materials and advertising campaigns, Defendant made material misrepresentations to Plaintiff and the members of the Class that Snapshot is safe for use in vehicles.

46.     These representations were false, and at the time such misrepresentations were made, Defendant knew or should have known of their falsity or, at the very least, acted with negligence and carelessness in ascertaining the truth of its false representations. Contrary to Defendant's representations, Snapshot is harmful to vehicles since it drains a vehicle's battery to the point that the battery is no longer functional or diminished in value.

47.     Defendant intended that Plaintiff and the members of the Class rely on these misrepresentations, and Plaintiff and the members of the Class did in fact rely on Defendant's misrepresentations when they participated in Snapshot.

48.     As a direct and proximate result of Defendant's misrepresentations, Plaintiff and the members of the Class have suffered damages.

14

## COUNT III

### Breach of Implied Warranty of Merchantability
### On Behalf of Plaintiff and the Class

49.     Plaintiff realleges and incorporates by reference the allegations contained above as if fully set forth herein.

50.     Through its marketing materials and advertising campaigns, Defendant implied to Plaintiff and the members of the Class that Snapshot was safe for use in vehicles.

51.     Plaintiff and the members of the Class were foreseeable users of Snapshot.

52.     Plaintiff and the members of the Class were using Snapshot in its intended manner and for its intended purpose (to record their driving habits in hopes of reduced insurance rates) at the time of injury to the Plaintiff and members of the Class.

53.     Snapshot is harmful to vehicles since it drains a vehicle's battery to the point that the battery is no longer functional or diminished in value.  Snapshot contained this defect at the time it was transferred from Progressive to Plaintiff and members of the Class.

54.     Through their wrongful conduct as alleged herein, Defendant breached the implied warranty of merchantability. Plaintiff and the members of the Class participated in Snapshot expecting that such product was safe for use in vehicles, but instead received a product that was unsafe for vehicles because it causes severe vehicle battery drainage. Therefore, Snapshot was not fit for the purpose for which it is used, or as promoted, advertised, marketed and distributed by Defendant.

55.     As a direct and proximate cause of Defendant's breach of implied warranty of merchantability, Plaintiff and the members of the Class have suffered damages.

## COUNT IV

### Violation of Consumer-Protection Statutes

56.     Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein, and alleges as follows on behalf of himself and the members of the Multi-State Subclass.

57.      This cause of action is brought pursuant to the consumer-protection statutes of the states specified herein and the District of Columbia.  The applicable provisions of these statutes are materially identical.

58.     Plaintiff is within the protections offered by these statutes.  Progressive is subject to the requirements of these statutes.

59.     These statutes proscribe unfair, unconscionable, and/or deceptive acts or practices. Progressive has violated these statutes by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

60.     Plaintiff and members of the Multi-State Subclass have been aggrieved by Progressive's unfair and deceptive practices in that Progressive represented that Snapshot is safe for use in vehicles and saves money, yet those that participated in Snapshot experienced higher costs due to severe drainage of their vehicle's battery.

61.     The damages suffered by Plaintiff and the Class were directly and proximately caused by the deceptive, misleading, and unfair practices of Progressive, as more fully described herein.

62.     Plaintiff and the members of the Multi-State Subclass, pursuant to the private-right-of-action provisions of these statutes, assert claims for actual damages, plus reasonable

attorneys' fees and costs.

63.     These statutes are as follows:

| | |
|---|---|
| Arizona | Ariz. Rev. Stat. §§ 44-1521, *et seq.* |
| Arkansas | Ark. Code Ann. §§ 4-88-101, *et seq.* |
| Colorado | Colo. Rev. Stat. §§ 6-1-101, *et seq.* |
| Connecticut | Conn. Gen. Stat. §§ 42-110a, *et seq.* |
| Delaware | Del. Code Ann. Tit. 6, §§ 2511, *et seq.* |
| District of Columbia | D.C. Code §§ 28-3901, *et seq.* |
| Florida | Fla. Stat. §§ 501.201 *et seq.* |
| Idaho | Idaho Code Ann. §§ 48-601, *et seq.* |
| Michigan | Mich. Comp. Laws §§ 445.901, *et seq.* |
| Missouri | Mo. Rev. Stat. §§ 407.010, *et seq.* |
| New Hampshire | N.H. Rev. Stat. §§ 358-A:1, *et seq.* |
| New Jersey | N.J. Stat. Ann. §§ 56:8-1, *et seq.* |
| New Mexico | N.M. Stat. §§ 57-12-1, *et seq.* |
| New York | N.Y. Gen. Bus. Law §§349, *et seq.* |
| Oregon | Ore. Rev. Stat. §§ 646.605, *et seq.* |
| West Virginia | W.Va. Code §§ 46A-6-101, *et seq.* |
| Wisconsin | Wis. Stat. § 100.18 |
| | Wis. Stat. § § 100.20, *et seq.* |

## COUNT V

### Strict Liability on Behalf of Plaintiff and the Class

64.     Plaintiff realleges and incorporates by reference the allegations contained above

as if fully set forth herein.

65.     Snapshot was defectively designed, manufactured, tested, assembled, planned, engineered, constructed, built, inspected, and distributed by Progressive, and the defective condition of Snapshot rendered the device unreasonably dangerous to the Plaintiff and the Class members as foreseeable users.

66.     At the time that Snapshot and its components parted the exclusive control of Progressive and was distributed by Progressive to the Plaintiff, the Class members and other foreseeable users throughout the United States, the Snapshot device and/or its component parts were defective and unreasonably dangerous, in that, without limitation:

a.     Snapshot and its components was defective by virtue of a design defect since Progressive designed Snapshot in a way that the device causes drainage to a vehicle's battery to the point that the battery is non-functional or diminished in value;

b.     Snapshot and its components was defective by virtue of a manufacturing defect since Progressive manufactured Snapshot using inappropriate and inadequate materials that caused Snapshot to drain a vehicle's battery to the point that the battery is non-functional or diminished in value;

c.      Progressive inadequately performed quality control, inspections and testing during the manufacture and assembly of Snapshot when such quality control, inspections and testing would have determined that Snapshot causes drainage to a vehicle's battery to the point that the battery is non-functional or diminished in value;

d.     Progressive knew or should have known of the defective and unreasonably dangerous condition of Snapshot but still marketed, advertised and distributed Snapshot throughout the United States without adequate warnings of its defective and unreasonably

18

dangerous condition, which, in a foreseeable manner, causes drainage to a vehicle's battery to the point that the battery is non-functional or diminished in value;

      e.    Progressive did not adequately warn of the risk to a vehicle's battery posed by Snapshot, even though such risk was known or knowable in light of the generally recognized and prevailing best scientific knowledge available at the time of Snapshot's manufacture and distribution.

67.    That at all times material hereto, Progressive knew or should have known when the product was designed, manufactured, tested, assembled, planned, engineered, constructed, built, inspected, or distributed, that Snapshot and its components would be used without inspection for defects.

68.    Progressive is strictly liable to the Plaintiff and the Class members as foreseeable users, for Snapshot's defective and unreasonably dangerous condition and the resulting damages therefrom.

69.    As a direct and proximate result of the defective and unreasonably dangerous condition of Snapshot, Plaintiff and the Class members have suffered damages, including, but not limited to, damages to their vehicles and/or their vehicles' batteries.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for a judgment:

A.    Certifying the Class as requested herein;

B.    Awarding Plaintiff and the proposed Class members damages;

C.    Awarding restitution and disgorgement of Progressive's revenues to Plaintiff and the proposed Class members;

D.    Awarding declaratory and injunctive relief as permitted by law or equity,

including enjoining Progressive from continuing the unlawful practices as set forth herein, and directing Progressive to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Progressive by means of any act or practice declared by this Court to be wrongful;

   E.  Awarding Plaintiff and the Class punitive damages;

   F.  Ordering Progressive to engage in a corrective advertising campaign;

   G.  Awarding attorneys' fees and costs; and

   H.  Providing such further relief as may be just and proper.

**DEMAND FOR JURY TRIAL**

   Plaintiff demands a trial by jury on all issues so triable.

Dated: June 21, 2013

             BALKAN & PATTERSON, LLP
             ADAM M. BALKAN (0044880)
             JOHN B. PATTERSON (023930)
             PARIS R. WEBB (0713074)

             _____/s/ Adam M. Balkan_____
             ADAM M. BALKAN
             601 S. Federal Highway, Suite 302
             Boca Raton, FL 33432
             Telephone: 561/750-9191
             561/750-1574 (fax)
             adam@balkanpatterson.com
             john@balkanpatterson.com
             paris@balkanpatterson.com

             SAXENA WHITE P.A.
             Jonathan M. Stein
             Florida Bar No. 009784
             Adam Warden
             Florida Bar No. 0873691
             2424 North Federal Highway, Suite 257
             Boca Raton, Florida  33431
             Phone:  (561) 394-3399
             Fax:     (561) 394-3382
             jstein@saxenawhite.com
             awarden@saxenawhite.com

LAW OFFICES OF SLOOTSKY,
PEREZ & BRAXTON
Jeffrey M. Braxton
Florida Bar No. 151963
2950 W. Cypress Creek Rd., Suite 300
Fort Lauderdale, FL  33309
Phone: 954-764-7377
Fax: 954-764-1545
jeffreybraxton@slootskylaw.com